UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22082-CIV-ALTONAGA/O'Sullivan

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**CARL R. ZWERNER**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff, the United States' Motion for Summary Judgment[1] ("Motion") [ECF No. 21], filed February 18, 2014.  Defendant, Carl R. Zwerner ("Zwerner") filed an Opposition to the United States' Motion for Summary Judgment ("Response") [ECF No. 25] on March 7, 2014; and on March 17, 2014, the United States filed its Reply . . . [ECF No. 26].  The Court has carefully considered the parties' written submissions, the record, and applicable law.

This case involves the collection of civil penalties assessed by the United States against Zwerner for failing to annually declare his foreign bank account on certain tax-related forms from 2004 to 2007.  (*See* Mot. 1).  In order to diversify his investments, Zwerner opened a foreign bank account in Europe around the late 1960s.[2]  (*See id*. ¶ 8; Resp. 1–2, ¶ 8; Zwerner Dep. 62:25–63:24, 67:19–25, 78:18–20).  At the advice of Swiss bankers and attorneys, Zwerner

---

[1] The Court refers to the page numbers provided by the Court's electronic case management ("CM/ECF") system when citing to Plaintiff's Motion, which is otherwise unnumbered.

[2] While the precise date the account was opened is unknown, Zwerner testifies he opened the account approximately 35 to 45 years ago, likely in the late 1960s. (*See* Zwerner Dep. 62:25–63:24 [ECF No. 21-1]).

established a Bond Foundation ("Foundation") based in Lichtenstein and deposited approximately $200,000 into the account. (*See* Mot. ¶ 8; Resp. 1–2, ¶ 8). A board of directors managed the Foundation and maintained signature authority over the account. (*See* Mot. ¶ 8; Resp. 1–2, ¶ 8). The account's funds were comprised of money earned and taxed in the United States, as well as funds earned overseas. (*See* Mot. ¶ 9; Resp. 2, ¶ 9).

Zwerner did not file a Report of Foreign Bank and Financial Accounts ("FBAR") declaring his foreign account. (*See* Mot. ¶¶ 28, 42, 51). Zwerner states he did not realize it was necessary to report his ownership interest in a foreign account located abroad and funded with money he earned overseas. (*See* Zwerner Dep. 138:10–140:11). Zwerner mistakenly believed the account's assets and earned income would only need to be declared if the funds were transferred to the United States. (*See id.* 74:4–22, 138:21–140:11).

Between 2006 and 2007, Zwerner became aware of a taxpayer's obligation to report an interest in a foreign account or foundation after reading news articles on the subject. (*See id.* 139:12–20; 186:1–187:20). In May 2008, Zwerner disclosed the foreign account to his longtime accountant, Robert Bloomfield, who advised Zwerner to consult an attorney. (*See* Mot. ¶ 31; Resp. 4, ¶ 31). Zwerner subsequently retained attorney Dennis Kleinfeld, who also engaged attorney Marc Nurik ("Nurik"). (*See* Mot. ¶¶ 32, 37; Resp. 4–5, ¶¶ 32, 37).

On February 10, 2009, Nurik and a consultant met with Internal Revenue Service ("IRS") criminal agent, Betty Stewart ("Stewart"), regarding their client's voluntary disclosure. (*See* Mot. ¶ 39). After the meeting, Stewart sent Nurik a letter dated February 17, 2009 explaining a voluntary disclosure is not made until the client's identity is disclosed to the IRS. (*See id.* ¶ 41; Resp. 5, ¶ 41; Feb. 17, 2009 Letter, Pl.'s Ex. M [ECF No. 21-13]). In March 2009, Zwerner filed amended tax returns. (*See* Mot. ¶ 52). On April 6, 2009, Nurik sent Zwerner a letter updating

him on the status of his voluntary disclosure and enclosing Stewart's February 10, 2009 letter. (*See id.* ¶ 44; Apr. 6, 2009 Letter, Pl.'s Ex. N [ECF No. 21-14]). The April 6, 2009 letter states, "in the attached letter dated February 17, 2009 . . . the John Doe referenced as making a Voluntary Disclosure is you. You are free to represent the same to any entity making inquiries regarding whether or not Voluntary Disclosure was made anonymously to the Internal Revenue Service." (Apr. 6, 2009 Letter, Pl.'s Ex. N) (alteration added).

In June 2010, the IRS commenced an investigation of Zwerner's income tax returns after reviewing his amended returns, and IRS Agent Carlos Tarrago ("Agent Tarrago") contacted Zwerner. (*See* Mot. ¶ 52). After multiple conversations with Agent Tarrago, Zwerner drafted a letter dated August 9, 2010 regarding the reasons for and the events related to the disclosure of his foreign account. (*See* Aug. 9, 2010 Letter, Def.'s Ex. M [ECF No. 25-6]). In the letter, Zwerner states he believed his attorney, Nurik, made a voluntary disclosure during a February 10, 2009 meeting with the IRS. (*See id.*; Resp. ¶ 40). Zwerner also admits, "I was aware that this account should have been reported and I should have reported the income from the account." (Aug. 9, 2010 Letter, Def.'s Ex. M). At the end of the letter, Zwerner references his full cooperation with Agent Tarrago. (*See id.*).

Zwerner later submitted a Statement on Dissolved Entities [ECF No. 21-3] dated November 8, 2011 to the IRS acknowledging his ownership interest in his foreign account formed through the Bond Foundation, and subsequently the Livella Foundation. (*See* Mot. ¶ 15; Resp. 2–3, ¶¶ 14–15).

Summary judgment may only be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c).

"[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

In the Motion, the United States asks the Court to enter summary judgment against Zwerner for the FBAR penalties assessed against him from 2004 to 2007, totaling $3,630,119.29, including interest and statutory additions calculated as of January 31, 2014. (*See* Mot. 31). Specifically, the United States argues Zwerner's failure to comply with the FBAR requirements was willful, justifying the higher civil penalties assessed against him. (*See id.* 18–22). Zwerner argues he did not willfully violate any reporting requirements (*see* Resp. 16–17) and asserts a number of affirmative defenses, including his eligibility for one of the IRS's voluntary disclosure programs (*see* Resp. 17–27). The United States refutes Zwerner's affirmative defenses, contending: the FBAR penalties do not violate Defendant's Eighth Amendment right to be free from excessive fines (*see* Mot. 22–25; Reply 5–6); the IRS is not prohibited from treating U.S. taxpayers disparately (*see* Mot. 25–26; Reply 8); and Zwerner was not eligible for and did not complete the 2009 Voluntary Disclosure Program (*see* Mot. 26–30; Reply 8–10).

U.S. citizens must keep records and report their interests in foreign financial accounts as required by law. *See* 31 U.S.C. §§ 5314(a), (c). Pursuant to the Code of Federal Regulations for "Reports of foreign financial accounts,"

> [e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. [section] 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD–F 90–22.1).

31 C.F.R. § 1010.350(a) (alterations added). U.S. taxpayers must report foreign financial accounts exceeding $10,000 on or before June 30 of each calendar year for accounts maintained the previous calendar year. *Id.* § 1010.306(c).

Penalties for reporting violations regarding foreign financial agency transactions generally are not to exceed $10,000. *See* 31 U.S.C. § 5321(a)(5)(B)(i). Willful violations, however, have a maximum penalty of $100,000, or fifty percent of the balance in the account at the time of the violation, whichever is greater. *See id.* §§ 5321(a)(5)(C)–(D). For a willful violation, the United States must show: (1) a U.S. person (2) with a financial interest or signatory or other authority (3) over a foreign financial account (4) that exceeds $10,000 in value (5) willfully (6) failed to file a timely FBAR disclosing the account. *See id.* §§ 5314, 5321(a)(5); 31 C.F.R. §§ 1010.306(c), 350(a). The Government's Motion asks the Court to decide there are no triable issues of fact that Zwerner's conduct was willful.

The United States contends Zwerner is liable for willful conduct, and thus should be subject to the maximum civil penalty. (*See* Mot. 15–22). The definition of willfulness asserted by the United States includes reckless disregard. (*See id.* 17 ("'willfulness' may be satisfied by establishing the individual's reckless disregard of a statutory duty, as opposed to acts that are known to violate the statutory duty at issue." (quoting *United States v. McBride*, 908 F. Supp. 2d 1186, 1204 (D. Utah 2012))). In *McBride*, the district court inferred willfulness from: the taxpayer's signature on his tax returns indicating constructive knowledge of relevant tax statutes, his familiarity with the accounting firm's promotional materials informing him of a duty to comply with FBAR requirements, and his disregard of the concerns he had over the legality of the accounting firm's strategies. *See id.* 908 F. Supp. 2d at 1205–06, 1208, 1210 (enforcing civil penalties against a taxpayer for willfully failing to comply with FBAR reporting requirements);

*see also United States v. Williams*, 489 F. App'x 655, 659–60 (4th Cir. 2012) (finding willful blindness and reckless conduct after a taxpayer had signed his tax return and was on inquiry notice of the FBAR reporting requirement but nonetheless failed to file). The United States maintains willfulness "does not require proof that the party knew he was acting wrongly." (Mot. 17 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007) (citations omitted) (holding that liability for willfully failing to comply with the Fair Credit Reporting Act extends to both known violations and violations based on reckless disregard of a statutory duty))).

Zwerner emphasizes a showing of willfulness requires a "voluntary, intentional violation of a known legal duty." *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991) (quoting *Cheek v. United States*, 498 U.S. 192, 192 (1991)). The Sixth Circuit in *Sturman* acknowledged "willfulness can be inferred from a conscious effort to avoid learning about reporting requirements." *Id.* (citation omitted) (applying the statutory willfulness standard in a criminal conviction for a taxpayer's failure to file an FBAR Form 90-22.1).[3] In *Cheek*, involving a conviction for income tax evasion and failure to file income tax returns, the Supreme Court held:

> [a] good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable. Statutory willfulness, which protects the average citizen from prosecution for innocent mistakes made due to the complexity of the tax laws, . . . is the voluntary, intentional violation of a known legal duty.

498 U.S. at 192 (alterations added; internal citations omitted).

Under either intent standard, genuine issues of material fact remain in dispute. While Zwerner admits he intended his foreign account to be a private, secret account, he states it was not done to avoid paying U.S. taxes. (*See* Zwerner Dep. 91:5–92:17, 138:7–143:13, 161:21–

---

[3] The civil and criminal statutes governing the filing of FBARs both use the term "willful." *See* 31 U.S.C. §§ 5321, 5322. A "term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (citation omitted).

162:5, 163:25–164:8). Zwerner insists he did know of any FBAR reporting obligations when he filed his tax returns from 2004 to 2007, as he was under the mistaken impression that funds earned or held overseas did not need to be declared and taxed. (*See id.* 138:14–141:19). Furthermore, Zwerner states he did not declare the foreign account on his accountant's tax organizer form because he believed: he did not have signatory authority over the account, he only had an indirect interest in the account, he did not know if he earned foreign income annually, and the funds initially deposited into the account were earned overseas. (*See id.* 66:14–25, 94:12–20; 139:6–141:19, 160:12–162:1, 163:8–164:12).

To refute Zwerner's arguments regarding his state of mind, the United States cites Zwerner's August 9, 2010 letter to the IRS, in which Zwerner admits he knew he should have reported his foreign account. (*See* Reply ¶ 8; Aug. 9, 2010 Letter, Def.'s Ex. M). But Zwerner explains he included the statement at Agent Tarrago's direction, despite not agreeing with it. (*See* Zwerner Dep. 224:1–226:1). Zwerner insists Agent Tarrago dictated the information to include in the letter (*see id.* 221:20–222:2), and Zwerner complied, noting he signed the letter in an effort to obtain a reduced civil penalty as Agent Tarrago hinted at. (*see id*. 226:2–21). As further evidence of the disputed factual record, Agent Tarrago denies he authored the letter and says Zwerner admitted he knew of the filing requirement during other conversations. (*See* Reply ¶ 8; Agent Tarrago Dep., Pl.'s Ex. T, 141:20–142:13, 153:23–155:25 [ECF No. 26-1]).

Whether Zwerner willfully failed to file FBARs for tax years 2004 to 2007 clearly remains an issue to be decided by the trier of fact.. *See McCormick v. United States*, 500 U.S. 257, 270 (1991) ("It goes without saying that matters of intent are for the jury to consider.") (citation omitted). Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment **[ECF No. 21]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of April, 2014.

*[signature]*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record